Fuld, J.
The principal question presented is whether a judgment of conviction, entered upon a plea of guilty to a particular crime, may .stand where the record discloses that, before accepting the plea, the court elicited information from the defendant which cast doubt upon his guilt of the crime to which he pleaded.
The defendant, accused of shooting and killing one Gilberto Bonilla, was indicted for the crime of murder in the first degree and, upon his arraignment and in the presence of counsel, entered a plea of not guilty. Subsequently, after the selection of a jury and the opening statement by the prosecution, the defendant—at his request and with the knowledge of his three assigned attorneys and the consent of the district attorney—was permitted to withdraw his plea and to plead guilty to the crime of murder in the second degree. .Sentenced to serve a prison term of 30 years to life, the defendant now appeals from a judgment of the Appellate Division affirming his conviction—upon which appeal he raises the issue stated above—and from an order of that court affirming a denial of coram nobis relief.
The record reveals that, before accepting the plea of guilty, the trial judge first heard the People’s version of the crime and then proceeded to interrogate the defendant not only as to the circumstances surrounding the change in plea but also as to the facts concerning the homicide itself. Without detailing the accounts of the crime as related by the prosecutor and the defendant, it is sufficient to say that there evolved from this colloquy between court and parties two distinct versions of the events surrounding the homicide. Of particular importance is the fact that, although the defendant admitted shooting and killing Bonilla, an essential element of the crime of murder in the second degree, namely, the intent to kill (Penal Law, § 1046), could not readily be inferred from the defendant’s recitation of the circumstances of the killing. Bather, if anything, his version of the shooting—simply put, that it occurred during the course of an argument with, and after a threat of bodily harm by, the deceased with whom he had long had a strained relationship — is more consonant with the lesser charge of manslaughter in the first degree, that is, a killing in the heat of passion (Penal Law, § 1050, subd. 2).
*308 Judging from his statements at the time of sentencing, the trial judge himself was aware of the considerable variance between the defendant’s story and that of the district attorney. However, instead of rejecting the change of plea or advising the defendant that his admissions might very well not amount to the crime to which he pleaded guilty and inquiring further whether he, nevertheless, wished to plead guilty—for instance, to avoid the risk of a jury verdict of first degree murder — the trial judge took it upon himself to resolve these differences by deciding that the defendant was not subject to belief. It is our view, as it was that of Yaleute, J., dissenting in the Appellate Division, that the resolution of the inconsistencies in the versions of the occurrence was not within the province of the court. In the words of Judge Yalente, “ Those were questions for a jury to decide in determining defendant’s guilt or innocence unless there was the interposition of a valid plea of guilt ” (20 A D 2d 777, 778).
Under the circumstances here presented, we do not see how it may properly be said that such a “valid plea of guilt” was interposed. It is true, as this court declared in People v. Griffin (7 N Y 2d 511, 516), that, “ [a]fter a plea to a lesser crime has been accepted, the factual basis of the crime confessed can ordinarily be found only in the langauge of the plea”. But, where, as is the usual case today, the trial court, before accepting the plea of guilty, properly inquires of the defendant as to the circumstances and details of the crime to which he is admitting his guilt, the mere mouthing of the word ‘ guilty ’ ’ may not be relied upon to establish all the elements of that crime. In such case, the requisite elements should appear from the defendant’s own recital and, if the circumstances of the commission of the crime as related by the defendant do not clearly spell out the crime to which the plea is offered, then, the court should not proceed, without further inquiry, to accept the guilty plea as a valid one.
In the present case, as indicated, the defendant’s admissions at the time he changed his plea go far toward negating the inference that he formed a design to kill Bonilla, a necessary ele *309 ment of the crime of murder in the second degree. His answers,therefore, do not sustain the conviction for that crime and, this being so, the trial court erred in taking the guilty plea without, at least, making further inquiry.
A somewhat analogous situation was recently presented in People v. Shipman (14 N Y 2d 883), in which this court held that a guilty plea could not stand where, prior to entering the plea, the defendant had related facts inconsistent with his guilt and, thereafter, had pleaded guilty solely because of a misunderstanding as to the elements of the crime with which he was charged. And, in People v. Morales (17 A D 2d 999), with respect to another .similar situation, the Appellate Division for the Third Department had occasion to remark that “ a Judge should not allow a plea to stand without some further inquiry and resolution of the conflict when at the same time a defendant has entered a plea of guilty he states in answer to the statutory question as to why sentence should not be pronounced that he is ‘ not guilty ’ ”.
The fact that in those two cases, unlike the present one, a motion to withdraw his guilty plea was made by the defendant is beside the point. Quite obviously, such a motion was the vehicle by which each of the defendants in the above two cases, at the time of his sentencing, called the court’s attention to the nonrecord facts thought to undermine the validity of his guilty plea. Here, on the other hand, it was the defendant’s own statements at the time he changed his plea which should have alerted the court to the insufficiency of his guilty plea and should have led it initially to refuse that plea. Such being the case, whether or not the defendant later interposed a motion to withdraw his plea is of no consequence.
The conclusion seems inescapable, therefore, that, in light of the defendant’s statement of the circumstances surrounding the homicide, the trial judge should not, in the first instance, have accepted his plea of guilty. It was, instead, his duty to refuse the plea and order the trial continued or, more appropriately, to advise the defendant that his admissions did not necessarily establish guilt of the crime to which he was pleading and to *310 question Mm further both with regard to his story of the crime and as to the possible disposition of his request to change Ms plea. (Cf. People v. Morales, 17 A D 2d 999, supra.) Of course, once so advised that his version of the crime is not consistent with the charge to which he is pleading, a defendant might still wish to plead guilty, perhaps to avoid the risk of conviction upon a trial of the more serious crime charged in the indictment, and such a plea could be accepted by the court. The fact remains, however, that, before accepting a plea of guilt where the defendant’s story does not square with the crime to which he is pleading, the court should take all precautions to assure that the defendant is aware of what he is doing. Manifestly, no such cautionary effort was here made.
In short, under all the circumstances, and especially in view of the defendant’s obvious difficulty with the English language and his unfamiliarity with court procedures, justice requires that the conviction be vacated and the defendant permitted to plead anew to the indictment.
In light of the view we have taken, it is unnecessary to consider the other points advanced by the defendant on the appeal from the conviction. And, since we are reversing the conviction and directing that the case be remanded to permit the defendant to replead, his appeal from the denial of comm nobis relief becomes academic.
The judgment should be reversed and the matter remitted to the Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein.
The appeal from the order affirming the denial of coram nobis should be dismissed as moot.
Chief Judge Desmond and Judges Burke and Bergan concur with Judge Fuld ; Judges Dye, Van Voorhis and Scileppi dissent and vote to affirm.
Judgment reversed and case remitted to the Supreme Court, Bronx County, for further proceedings in accordance with the opinion herein. Appeal in the coram nobis proceeding dismissed as moot.